# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

(To be supplied by the court)

**Ms.Jami M. Vigil** _____ , Plaintiff

v.

**Vibra Hospital of Denver, LLC** _____ ,

**Mr. Michael Weiss of Vibra** _____ ,

_____ ,

_____ , Defendant(s).

*(List each named defendant on a separate line.  If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names.  The names listed in the above caption must be identical to those contained in Section B.  Do not include addresses here.)*

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

**JUN 15 2020**

JEFFREY P. COLWELL
CLERK

_____

---

## EMPLOYMENT DISCRIMINATION COMPLAINT

---

### NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files.  Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number.  A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

## A. PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

Ms. Jami M. Vigil  1465 Saltbush Ridge Road  Highlands Ranch, CO 80126

(Name and complete mailing address)

# 303-908-9200  jamiMvigil@gmail.com

(Telephone number and e-mail address)

## B. DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint. If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1:  Vibra Hospital of Denver, LLC Corporation Service Company 1900 West Littleton Boulevard Littleton, CO 80120

(Name and complete mailing address)

# 303-582-1385; 303-288-3000

(Telephone number and e-mail address if known)

Defendant 2:  Mr. Michael Weiss of Vibra Hospital of Denver 8451 Pearl St, Thornton, CO 80229

(Name and complete mailing address)

# 303-288-3000;

(Telephone number and e-mail address if known)

## C. JURISDICTION

*Identify the statutory authority that allows the court to consider your claim(s): (check all that apply)*

**X**   Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. (employment discrimination on the basis of race, color, religion, sex, or national origin)

**X**   Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101, et seq. (employment discrimination on the basis of a disability)

____   Age Discrimination in Employment Act, as amended, 29 U.S.C. §§ 621, et seq. (employment discrimination on the basis of age)

____   Other: *(please specify)* _____

2

**D.    STATEMENT OF CLAIM(S)**

*State clearly and concisely every claim that you are asserting in this action and the specific facts that support each claim. If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE:    **WRONGFUL TERMINATION**

The conduct complained of in this claim involves the following: (*check all that apply*)

\_\_\_\_ failure to hire                    **X** different terms and conditions of employment

\_\_\_\_ failure to promote              \_\_\_\_ failure to accommodate disability

**X** termination of employment      **X** retaliation

**X** other: (*please specify*) Experienced during + subsequent to termination: belittling, degrading, and misrepresentation declaring my skills deficient

Defendant's conduct was discriminatory because it was based on the following: (*check all that apply*)

\_\_\_\_ race              \_\_\_\_ religion          \_\_\_\_ national origin        \_\_\_\_ age

\_\_\_\_ color            \_\_\_\_ sex              **X** disability

Supporting facts:

**Please see attached\***

3

CLAIM TWO: # HOSTILE WORK ENVIRONMENT

The conduct complained of in this claim involves the following: (*check all that apply*)

____ failure to hire        X different terms and conditions of employment

____ failure to promote     X failure to accommodate disability

____ termination of employment    X retaliation

X other: (*please specify*) The HOSTILITY CONTINUED SUBSEQUENT To my termination via defamation of professional character. Allan to include Slander

Defendant's conduct was discriminatory because it was based on the following: (*check all that apply*)

____ race        ____ religion    ____ national origin    ____ age

____ color       X sex            ____ disability

Supporting facts:
Please see attached*

Click Here for Additional Claim

4

## E.    ADMINISTRATIVE PROCEDURES

Did you file a charge of discrimination against defendant(s) with the Equal Employment
Opportunity Commission or any other federal or state agency? (*check one*)

☑ Yes  (*You must attach a copy of the administrative charge to this complaint*)

☐ No

Have you received a notice of right to sue? (*check one*)

☑ Yes  (*You must attach a copy of the notice of right to sue to this complaint*)

☐ No

## F.    REQUEST FOR RELIEF

*State the relief you are requesting or what you want the court to do.  If additional space is needed
to identify the relief you are requesting, use extra paper to request relief.  Please indicate that
additional paper is attached and label the additional pages regarding relief as "F. REQUEST
FOR RELIEF."*  *Please See attached written*

## G.    PLAINTIFF'S SIGNATURE

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this
complaint, and that the information in this complaint is true and correct.  *See* 28 U.S.C. § 1746;
18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my
knowledge, information, and belief that this complaint: (1) is not being presented for an improper
purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
(2) is supported by existing law or by a nonfrivolous argument for extending or modifying
existing law; (3) the factual contentions have evidentiary support or, if specifically so identified,
will likely have evidentiary support after a reasonable opportunity for further investigation or
discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

_____
(Plaintiff's signature)

June 12th, 2020
_____
(Date)

(Revised December 2017)

**REQUEST FOR RELIEF**

Plaintiff requests the following relief listed is plaintiff's initial request, but is not limited to:

1. compensation of lost wages
2. wages additionally added calculating and accommodating for lost years which would otherwise increase my market value as a respiratory medical professional;
3. Compensatory damages for defamation of character and professional skills
4. compensatory damages accounting for stress and duress, physical and Psychological and emotional abuse
5. Reimbursement of school loans

Date: 12 June 2020

_(Plaintiff's Original Signature)_

1465 Saltbush Ridge

(Street Address)

Highlands Ranch, CO 80126

(City, State, ZIP)

303.908.9200

(Telephone Number)

Plaintiff: Ms. Jami M. Vigil

Defendent:

1. Vibra Hospital

2. Mr. Michael A. Weiss

CLAIM ONE:  WRONGFUL TERMINATION

SUPPORTING FACTS:

1.      In November 2016 I passed the top-tier board exam at the undergraduate level of Respiratory Care to become recognized as a Registered Respiratory Therapist (RRT) by the National Board of Respiratory Care (NBRC).  I then began the process of applying to hospitals throughout the Front Range of Colorado.

2.      My college placement office, Concord Career College, where I had earned my Associate's Degree, submitted my name to Vibra Hospital of Denver for consideration of employment by Vibra.

3.      Vibra's Director of Respiratory Therapy, Mr. Mike Weiss, conducted a telephone interview with me on or about December 9, 2016.  Mr. Weiss and I then scheduled a second interview, which was an in-person meeting in person at the Vibra facility on or about December 15, 2016.

4.      During this in-person interview, I was very intentional about informing Mr. Weiss regarding my disability, which is a congenital hearing loss.  I specifically informed him that I often wore hearing aids when the paradigm allowed.

5.      In response to my disclosure of my disability, Mr. Weiss stated, "Oh, that's no problem! Actually we have a therapist on-site, Dori, who also has a hearing loss.  She just got hearing aids recently, and she works (her shifts/duties) just fine...it's not an issue."  When I asked questions about my having no prior paid experience as a respiratory therapist (RT), having just successfully completed my academic training and professional certification as an RRT, he enthusiastically assured me that he preferred to hire "new grads" because he could then train them to his specifications, which the nature of a Long Term Acute Care Hospital (LTACH)

paradigm required. Mr. Weiss further went on to give me a written test, which I passed with a perfect score of 100%.

6.      At the end of the interview, Mr. Weiss gave me his mobile phone number and he instructed me to call him with any questions. He stated that a decision would be made by the end of the week, but to call him if I'd not heard anything by then.

7.      On Dec 22, 2016, not having heard anything further from Mr. Weiss or anyone at Vibra, I called Mr. Weiss on the number he had given me. Upon answering my call, Mr. Weiss was very warm and cordial, explaining to me that he had taken the week off to work on his house but was extremely happy I'd reached out to him. I was surprised at the tone of the call and found that he had nothing of a professional nature to communicate to me. The experience presented as though he had actually intended for me to reach out to him on a personal level, rather than the professional follow-up I had previously been instructed to make. However, when he realized my call was only intended to check-in regarding the progress on making a decision to hire me or not, he ended the call abruptly, stating, "I've interviewed all the candidates and am just waiting to hear about something else...you'll be hearing from us very soon."

8.      I remained hopeful about being offered the full-time position he had stated that Vibra needed to fill. As an RRT with "new grad" status, the wages offered in an LTACH setting were significantly higher than in any other hospital setting. I felt as though I was being considered for an exceptional opportunity, given my complete lack of prior professional experience.

9.      Three weeks later I received a call from Human Resource (HR) Director Lorna Fulton, offering me a full-time position at Vibra. After I verbally accepted, I received further information from Ms. Fulton about my orientation. Apparently, it was offered once a month, and I had missed the January 2017 session(s). So, my official start-date at Vibra would not be until February 13, 2017.

10.     Upon starting work, my experiences as they pertain directly to my disability and the accommodations needed and promised were not what was discussed and represented to me by Mr. Weiss in my interview with him, nor in any of the other conversations I had with Vibra representatives leading up to my first day at the facility.

11.     The following is a summary of events that I experienced beginning February 13, 2017 (my first day on the job) through my final day at the Vibra hospital facility, March 30, 2017:

a. I was required to treat acute-care patients and independently chart, and administer medications without supervision within hours of arriving for my first floor shift.

b. I was berated by multiple staff RTs for not understanding directions, when in truth I had not heard them instructed to me; I repeatedly asked each and every person to speak directly to me so that I would clearly understand whatever was needed for proper training and care of every patient.

c. Instead of addressing my disability, RTs would become angry with the higher level of attention needed in order to instruct and properly train me, with statements that they felt the effort to directly speak in my direction was too much to expect of their time, and then they would complain behind my back to Mr. Weiss and one another, as detailed in my 1-month "review."

d. The 1-month review previously mentioned was written up as an "Opportunity For Improvement," and contained slanderous misrepresentations of incidents that other RTs claimed occurred whilst I was on the floor treating patients.

e. When I was called into Mr. Weiss's office for what was an extremely surprising formal write-up thinly cloaked as an opportunity for me to "grow and learn" as a new hire, I was so stunned at what was fabricated in the write-up that I felt an explanation in my own defense was in order, and fair at the very least. Instead, Mr. Weiss raised his tone and interrupted, stopping my efforts with three demeaning words: "Own it, Jami!"

f. When I asked how often an RT was able to recover from the kind of claims detailed in the "Opportunity For Improvement," I was forced to sign, "if I wanted to remain gainfully employed and prove that [I] was a capable RT,". His direct response to my question was—while shaking his head—"not very many."

g. Renewing my efforts to gain the training and time with senior therapists that I had been promised, I pled for training time with my supervisor, Ms. Kathy Lois Patterson. Despite assertive efforts to be partnered with therapists whom I recognized as mentor-material, I was repeatedly denied the opportunity. Once I was sent to the 2nd Unit to give simple breathing treatments to low-acuity patients. I was refused the access codes to obtain the medications, and was blamed and singled out for not completing my assignments after the first round, despite searching desperately for assistance and calling the phone numbers assigned to the other therapists who were on that shift, but none of them would answer my calls. It felt as though they were intentionally not responding to me.

h. When a non-hearing-impaired male student from the same medical college I had graduated from received intensive one-on-one training throughout his shifts, even documenting and charting in the computer system I had yet to be given any training on as a new hire some four weeks or so into my employment, I was shocked and made several requests to be given the training alongside the preceptor and trainer he

3

was being given as a short-term student.  I was repeatedly ignored and was not even given a reason as to the decision.

i.  On several occasions I experienced express and hurtful mocking for not being able to hear, including from long-time therapists Joe Nikolas and Bich Tran who instructed me to "keep to myself and keep my mouth shut."

j.  When Mr. Weiss instructed me to stop by HR before I began my March 30, 2017 shift, I questioned him directly via text message, as he refused to speak with me on a phone call, stating he didn't have the time, asking if there was something specific I should know, should be expecting or be concerned about.  He said, "Just stop by Lorna (Fulton's) office.  If I'm not there I will make it shortly."

k.  Sensing this was not going to be a meeting in my favor, I called Ms. Fulton and questioned her directly.  When I expressed specifically the total lack of any reasonable accommodations having been made for my hearing loss, she vehemently denied this, insisting that she knew Mr. Weiss well and that he would have given me anything I asked for to accommodate my training and special needs. Additionally, she had been given a complete medical history regarding my hearing loss, as it was in my employment file.

l.  As a result of the hostile work environment created at Vibra, I have suffered subsequent anxiety and significant bouts of depression directly associated to my wrongful termination from Vibra. From the moment I was faced with Mr. Weiss' surprise meeting on March 15, 2017 to receive the contents of his fabricated OFI (and the concerns and issues drafted within), continuing to this present day, I am battling anxiety, self-doubt, and an over-whelming sense of professional worthlessness in a profession in which I was deemed a very promising new-comer before my experience at Vibra.

12. Further evidence of the hostile work environment created by Mr. Weiss and condoned by Vibra Hospital is the semi-annonymous complaint Mr. Weiss filed against my medical license with Colorado's Department of Regulatory Agencies (DORA). According to eyewitness testimony, he feared that I was preparing to file a complaint with DORA against *him*. He filed his complaint a full month after my termination (it was filed on April 27, 2017). I would later learn from Ms. Kathy Patterson that it was filed in retaliation once he was informed that I had requested my personnel file. This was a concrete action on the part of Mr. Weiss to deflect and redirect attention away from his own negligence as Director of Respiratory Therapy and to deflect and redirect attention away from his own illicit and irresponsible behaviors.

13. Further evidence of the hostile work environment created by Mr. Weiss and condoned by Vibra Hospital is the semi-annonymous complaint Mr. Weiss filed against my medical license with Colorado's Department of Regulatory Agencies (DORA). According to eyewitness testimony, he feared that I was preparing to

file a complaint with DORA against *him*. He filed his complaint a full month after my termination (it was filed on April 27, 2017). I would later learn from Ms. Kathy Patterson that it was filed in retaliation once he was informed that I had requested my personnel file. This was a concrete action on the part of Mr. Weiss to deflect and redirect attention away from his own negligence as Director of Respiratory Therapy and to deflect and redirect attention away from his own illicit and irresponsible behaviors.

14. In the complaint Mr. Weiss filed against my license, he outlined at length several fabrications about my performance as a negligent Respiratory Therapist; these allegations were so egregious and serious in nature that I was placed in significant jeopardy of losing my license permanently, should any legitimacy be found within the claims he was making. Because of the attention and resources Mr. Weiss' complaint absorbed, DORA two years and nine months to complete their investigation. DORA finally dismissed all allegations as unfounded in December 2019.

15. After significant thought and assessment of my options, I felt it was my duty to be forthright with what I've suffered and to protect the medical profession and community by filing an official complaint with the EEOC. I officially filed on January 8th, 2018; a copy of this original complaint is attached here, along with supplemental details as incorporated here within.

16. On March 12th, 2020, the EEOC issued a "Letter of Right to Sue" as their decision in my case; I received this letter on or later than Tuesday, March 17th, 2020. A copy of this Letter of the "Right To Sue" is attached.

2020 06 10.1

<u>CLAIM TWO: HOSTILE WORK ENVIRONMENT</u>

<u>Supporting Facts:</u>

1.    Rather than repeating all of the same facts I stated above for Claim 1, I make reference to them here and incorporate all of them here.

2.    I was sexually harassed, assaulted, bullied and placed in an extremely hostile work environment on a consistent basis while employed at VIBRA Hospital of Denver.

3.    From the beginning of my employ at VIBRA through my final day, I was the subject of ridicule and objectified by both men and women, both superior and equal in rank to my own.

4.    On what was (unbeknownst to me) my last shift on or about March 25, 2017, I was required to be shadowed by Ms. Karen DeLuna, RRT. Rather than assist and redirect my therapy and treatment responsibilities (as I had been informed by Mr. Weiss would be her assingment) she engaged in long, time-consuming and work-delaying lectures about my needing to improve time management. She insisted that she "...was being nice to me compared to how (others) would be treating (me)..." had they been assigned to shadow me on that shift. I viewed *this as a focused and intentional effort to sabotage my success; the amount of time she* consumed in reiterating her beratments effectively forced my schedule into a compromising paradigm. This ultimately reflected in timely patient care, which she would later report to Mr. Weiss as my being incapable of success, rather than assist and effectively train me.

5.    When Mr. Weiss asked me—with Ms. DeLuna present—how the shift with Ms. DeLuna had gone, I reported that I felt confident in the tasks required of me, but that unforeseen interruptions hd caused delays in the timeliness of completing all required tasks and treatments. Ms. DeLuna was seated cross the table from me and shook hher head clearly in disagreement in what I was reporting. I asked Mr. Weiss if I could speak alone after the shift, at which time I became emotional with tears, overwhelmed with what felt like complete defeat I had continually felt throughout the shift whenever I attempted to efficiently complete each patient's care. Mr. Weiss openly agreed with me, even agreeing wih me when I suggested that what I truly needed was to be allowed to complete a shift without someone interrupting my efforts in ordwer to be successful.

6.    My claims in having suffered such stress and duress at the hands of hospital leadership and respiratory therapy peers were reported to high-level appropriate officials in administration.  I detailed in my exit-interview that no one in the respiratory department had taken a single full-shift to train me, nor accommodate the requirements for learning as a new-hire.  When everything was fully reported to HR Director Ms. Fulton, and to then-Chief Nursing Officer (who would become Chief Operating Officer subsequent to my dismissal) Ms. Linda Tautz, Ms. Tautz exclaimed, "Jami! You should already know how to perform those tasks and

know acute care treatments from your previous hospital employment!"—to which I informed her, "I haven't had any other positions: VIBRA is my first job after graduation." Ms. Tautz looked stunned, and was without further comment the remainder of the meeting.

7.      In this meeting with Ms. Fulton, she stood firm in her insistence that Mr. Weiss would have been as accommodating as I would have asked for. She further insisted that my claims of harassment were entirely false and that she refused to believe me regarding the bullying I was subjected to from multiple respiratory therapists in the department (Ms. Bich Tran, Mr. Joe Niklaus, Ms. Karen DeLuna, Ms. Debbie Ray); neglect and then several falsifications of egregious medical events by way of my alleged negligence with patients as asserted by Ms. Tran, Mr.Niklaus, Ms. Deluna and another RT; the significant lack of training where it was detailed as needing to be given within a specific time limitation by managerial and senior RT staff (as is evidenced by the fact that only about one-third of the required training assignments in the Vibra training manual had been completed because no training was made available); by Mr. Weiss's lack of training and availability whenever I attempted to reach him on site when he was scheduled: there were repeated promises of creating time to train me for required procedures and handling of equipment, yet during business hours for help and training, having been slapped on the arm by Respiratory Department Supervisor Ms. Debbie Ray said to be false; and subsequently all of my concerns were dismissed when reported to the hospital's HR Director Ms. Fulton on a desperate phone call made around 4:45 P.M. on March 29, 2017—the evening before I was to report to the HR Department before my shift the next morning, as instructed by Mr. Weiss.

8.      At the end of a day shift, several therapists would crowd into the Respiratory Therapy Department and, instead of going out onto the hospital floor to review patient care and engage in the customary and usual "pass off report" to the incoming RT taking over the unit from the day-shift RT, they would instead gather in loud discussions with one another socially. I brought this concern up on several occasions to Mr. Weiss, as I could not understand anything that was being discussed—or if what was being communicated was directed to me and was significant to pertinent to the medical condition as information being passed forward about a patient's condition.

9.      While sitting at the table in the department during the 6:30 P.M. shift change, I was doing my best to pay attention to whomever it was trying to pass along instructions to me. All at once, Ms. Tran began shouting instructions from across the table as Ms. Ray simultaneously slapped the side of my right upper arm to direct my attention toward what Ms. Tran was demanding of me. "Listen!" Ms. Ray directed with raised voice. This physical assault stung more than my emotions, my arm was left burning as my head was spinning in best attempts made to "hear" best who it was demanding my attention with degrading verbiage and toxic tones. I felt at a loss for an advocate, despite approaching Ms. Cindy Creesen about four weeks into my time at Vibra, stating that I felt as though she had been kind in my first few weeks, and that it seemed there had been a sudden change in her demeanor toward me. She did her best to brush it off as my imagination: unbeknown to me at the time, the entire department had been formally informed by Mr. Weiss *not* to train me because, in his own words, he had plans to fire me.

Respiratory Department Shift-Supervisor and Charge Therapist, Ms. Kathy Patterson, would later formally reveal in writing to the Colorado Department of Regulatory Agencies (DORA), that Mr. Weiss had shared thoughts about me to the department behind my back, stating: "She's nice to look at but she's as dumb as a box of rocks!"

10.     This last demeaning, harassing and hostile statement – "She's nice to look at but she's dumb as a bag of rocks!" -- was in direct contradiction to the complimentary statement he made to me privately in his opening remarks to me while he was conducting a one-month review/disciplinary meeting where he delivered my written "Opportunity for Improvement" (an"OFI"). His opening words to me in this (unschedued) meeting were, "Jami, first let me say that I think you are incredibly intelligent.  In fact I think you're probably one of the smartest people in this entire hospital,"--and then he proceded to shock me with a paradoxical presentation of concerns and annonymous complaints he had received when asking others as to my performane in the first four weeks.

01/17/2018 07:12 FAX                                                      ☒001

*OK* FAXED O 805 17 JAN WED 2018                    *OK 10:07 AM*
   *TO MS ___ MCCUNN*                              FAXED TO: 3.861.775
                                                   *KAREN M. Ratcliffe, Esq*

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### CHARGE OF DISCRIMINATION

EEOC Form 5A (October 2017)                      For Official Use Only – Charge Number

| | |
|---|---|
| **Personal Information** | First Name: JAMI   MI: M   Last Name: VIGIL<br>Address: 1465 Saltbush Ridge Rd.   Apt: ___<br>City: HIGHLANDS RANCH County: U.S.A   State: CO   Zip Code: 80126<br>Phone 303·908·9244 Home ☐ Work ☐ Cell ☒   Email: jami.m.vigil@gmail.com |
| **Who do you think discriminated against you?** | Employer ☒   Union ☐   Employment Agency ☐   Other Organization ☐<br>Organization Name: VIBRA HOSPITAL of DENVER<br>Address: 8451 Pearl Street   Suite: ___<br>City: Thornton   State: CO   Zip Code: 80229   Phone 303 288· |
| **Why you think you were discriminated against?** | Race ☒   Color ☐   Religion ☒   Sex ☒   National Origin ☐   Age ☒<br>Disability ☒   Genetic Information ☐   Retaliation ☒   Other ☐ (specify) |
| **What happened to you that you think was discriminatory?** | Date of <u>most recent job action</u> you think was discriminatory: 27 April 2017<br>Also describe briefly <u>each job action</u> you think was discriminatory and when it happened (estimate). On 30 March, 2017, I was terminated w/o due process, although claims of my professional incompetency were made and falsified to attempt my separation. The experiences I had from the beginning of my association w/Vibra were fraught w/failure to meet) reasonable accommodations for my hearing impairment, which they were made aware of prior the date of my first interview on 22 Dec 2016 when I asked for instructions to be put in writing, they denied to meet. This I asked to be spoken directly, forward my face when they failed |
| | I understand this charge will be filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address, phone, or email. I will cooperate fully with them in the processing of my charge in accordance with their procedures. |
| **Signature and Verification** | I understand by signing below that I am filing a charge of employment discrimination with the EEOC. I understand that the EEOC is required by law to give a copy of the charge, which includes my allegations and my name, to the organization named above. I also understand that the EEOC can only investigate charges of job discrimination based on race, color, religion, sex, national origin, age, disability, genetic information, or based on retaliation for filing a charge of job discrimination, participating in an investigation of a job discrimination complaint, or opposing job discrimination |
| | I declare under penalty of perjury that the above is true and correct.<br>Signature: *Jami M. Vigil*     Date: 16 Jan 2018 |

# RECEIVED

JAN 17 2018



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### PRE-CHARGE INQUIRY

| For Official Use Only – Inquiry Number |
| --- |

Thank you for contacting the U.S. Equal Employment Opportunity Commission ("EEOC").  The information you give us on this Pre-Charge Inquiry (Form 290A) will help us assist you and determine if your concerns are covered by the employment discrimination laws we enforce.  Answer all questions completely and briefly.  Please write clearly.

After completing this Pre-Charge Inquiry, **return it immediately to the EEOC office identified in the cover letter to this Pre-Charge Inquiry, or to the receptionist if you are completing this Pre-Charge Inquiry in an EEOC office.**

**Please note:  This Pre-Charge Inquiry is not a Charge of Discrimination.**

The Pre-Charge Inquiry is not intended for use by applicants for federal jobs or employees of the US government. See http://www.eeoc.gov/federal/fed_employees/complaint_overview.cfm for discrimination complaints in federal jobs.

---

**Personal Information**

First Name: JAMI  MI: M  Last Name: VIGIL

Home Phone: (303) 470-16A8 (303) 908.9?00 Email: jamMvigil@gmail.com
(primary #)

Address: 1465 Saltbush Ridge Rd  Apt.:

City: HIGHLANDS RANCH  County: DOUGLAS State: CO Zip Code: 80126

What is the best way to reach you? Cellular phone, text

What are the best days and times to reach you? 24/7 - mid morning
* work week * anytime *  Week-days

Do you need language assistance? Yes ☐  No ☒

If so, what do you need? n/a

Date of Birth: 2/19/1970  Sex:  Male ☐  Female ☒

General information about you that will allow us to serve all individuals better:

i.  Are you Hispanic or Latino? Yes ☒  No ☐

ii.  What is your race? Choose all that apply:  American Indian or Alaskan Native ☐   Asian ☐

Black or African American ☐   Native Hawaiian or Other Pacific Islander ☐   White ☒

iii.  What is your National Origin or ancestry? BORN IN U.S.A., Iberian/
Hispano / hispanic

---

**Who do you think discriminated against you?**

Employer ☒   Union ☐   Employment Agency ☐   Other Organization ☐

Organization Name VIBRA HOSPITAL OF DENVER, 8451 Pearl Operating Co.

Address: 8451 PEARL STREET  Suite:

City: THORNTON  County: ADAMS State: CO Zip Code: 80229

Name of Human Resources Director or Owner: MS. Lorna Fulton

Email LFULTON@VHDENVER.COM  Phone: 303 288-3000

---

THIS PRE-CHARGE INQUIRY IS NOT A CHARGE OF DISCRIMINATION

01/17/2018 07:13 FAX                                                                    ☑003

| | |
|---|---|
| **Who do you think discriminated against you?**<br><br>**(continued)** | How many employees (estimated) does the organization have at all locations? Check one:<br>Less than 15 ☐    15-100 ☐    101-200 ☐    201-500 ☐    More than 500 ☒<br>Where you work(ed), or applied to work, if different from the organization address above:<br>Address: _Same address_ _____ Suite: ____<br>City: _____ County: _____ State: ____ Zip Code: _____ |
| **Why do you think you were discriminated against?** | I think I was discriminated against because of:<br><br>☒ Race – Your race: _Hispanic_<br><br>☐ Color – Your color: _____<br><br>☒ Religion – Your religion: _Christian_<br><br>☒ Sex (including pregnancy, gender identity, or sexual orientation)<br><br>☐ National origin – Your national origin: _____<br><br>☒ Age (40 or older) – Your age at the time of the adverse employment action: _46_<br><br>☒ Disability – Check all that apply:<br>   ☒ I have a disability<br>   ☐ I had a disability in the past<br>   ☐ I don't have a disability but I am treated as if I have a disability<br>   ☐ I am closely related to or associated with a person with a disability<br>   The disability involved: _hearing loss_<br>   Is your employer aware of the disability? Yes ☒ No ☐<br>   If yes, how? _Stated in first interview, gave HR full-file of documentation, told every trainer_<br><br>☐ Genetic information, my family medical history, or my participation in genetic services like counseling, education or testing<br><br>☐ Retaliation – Check all that apply:<br>   ☒ I filed a charge of job discrimination about any of the above<br>   ☒ I contacted a government agency to complain about job discrimination<br>   ☒ I complained to my employer about job discrimination<br>   ☐ I helped or was a witness in someone else's complaint about job discrimination<br>   ☒ I requested an accommodation for my disability or religion<br><br>☐ None of the above – The reason for this inquiry |
| **What happened to you that you think was discriminatory and when did it happen?** | EXAMPLES: I was denied an accommodation I needed to perform my job; I was fired because I was pregnant; I was laid off because of my age. State the date the action happened.<br>Date: _02/15/2017_ Action: _I was denied reasonable accommodations needed for appropriate training in order to ultimately perform all job duties independently and autonomously_<br>Date: _03/30/2017_ Action: _I was terminated in a meeting designed to formalize claims about my inability and lack of capability to treat the patients at this hospital_<br>Chief of Person or Responsible: _Director Mike Weiss, Supervisor Debbie Ray, CEO Linda Lauto, H.R. Dir. Lorna Fulton; fellow peers_<br>(Chief Clinical Exec. Officer) |

~ RTs: Joseph Nikolaus, Cindy Garner, Sherri Greer, Dick Tran, Karen DeLuna, Ms. Sidney Gish

THIS PRE-CHARGE INQUIRY IS NOT A CHARGE OF DISCRIMINATION

01/17/2018 07:13 FAX                                                                           @004

| | |
|---|---|
| **What reason(s) were you given for this job action?** | Reason(s): I was read a list of exaggerations and falsified claims about my inability to provide knowledge and thorough care to the patients at ViBRA<br><br>Who told you this? HR Dir. Lana Fulton   His or Her Job Title: Human Resource Dir.<br>C.C.O. Linda Tatze — Chief Clinical Officer |
| **What is your job, previous job, or the job you applied for?** | Date Hired: 02/13/2017  Job Title at Hire: Respiratory Therapist (RRT)<br>Annual Pay Rate When Hired: 31.00 hr  Last or Current Annual Pay Rate: 31.00 hr<br>Job Title at Time of Alleged Discrimination: Respiratory Therapist (RRT)<br>Date Your Employment Ended: 3/30/2017  Select One: Quit ☐  Discharged/Laid off ☑<br>Name and Title of your Immediate Supervisor: Michael Weiss, Dir of Therapies<br>Job Applicants - What was the title of the job you applied for: n/a<br>Date you applied: __/__/__   Date you found out you were not hired: __/__/__ |
| | **Was another person in the same or similar situation treated the same, better, or worse than you?**<br>**EXAMPLES: Who else applied for the same job? Who else had the same attendance record? Who else had the same performance appraisal?** |
| **Who was treated BETTER than you?**<br><br>(N/Another<br>temp)<br><br>★ although it was not a student that received attention and training that I did | 1 Name: Male Student from Concorde Career College  Job Title: RT STUDENT<br>Email: n/a   Check how they are different from you:<br>Race ☐  Color ☐  Religion ☐  Sex ☑  National Origin ☐  Age ☑  Disability ☑ (back of)<br>How were they treated better? On one work day of training I noticed a young goodlooking male Respirator student  Date: __/__/__<br>2 Name: receiving preferential training in being given more Time  Job Title: RT STUDENT who<br>in attention and in working with Ms. Patterson<br>Email: I had specifically asked for myself to receive training  Check how they are different from you:<br>Race ☐  Color ☐  Religion ☐  Sex ☐  National Origin ☐  Age ☑  Disability ☑ From<br>How were they treated better? Thats the way it goes sometimes<br>and training that I did  Is what she said to me when I  Date: __/__/__<br>brought this up |
| **Who was treated WORSE than you?**<br><br>n/a | Name: _____   Job Title: _____<br>Email: _____   Check how they are different from you.<br>Race ☐  Color ☐  Religion ☐  Sex ☐  National Origin ☐  Age ☐  Disability ☐<br>How were they treated worse?<br>                                        Date: __/__/__ |
| **Who was treated the SAME as you?**<br><br>n/a | Name: _____   Job Title: _____<br>Email: _____   Check how they are different from you:<br>Race ☐  Color ☐  Religion ☐  Sex ☐  National Origin ☐  Age ☐  Disability ☐<br>How were they treated the same?<br>                                        Date: __/__/__ |

**THIS PRE-CHARGE INQUIRY IS NOT A CHARGE OF DISCRIMINATION**

| Are there any witnesses to any of the job actions taken against you? If yes, please provide their contact information and tell us what they will say (if they should are honest) | 1 Name: KATHY PATTERSON    Job Title: lead Respiratory Therapist |
|---|---|
| | Email: KPatterson@vhadenver.com Phone: 303.570.8510   Phone: (770) 971-3546 |
| | What will they tell us: Ms. Patterson asked, i my request on my behalf if I could train under here. The Request was denied several times by management. |
| | 2. Name: DEBBIE RAY    Job Title: Respiratory Supervisor |
| | Email: Deborah_ray_24@yahoo.com (H) 970.281.1428   Phone: (3) 913.2930 |
| | What will they tell us: DEBBIE WAS MY direct sup. who declared to me - publically that I was very smart and was doing an excellent job. especifically when I caught a patient declining rapidly and was able to diagnose his resp. distress, possibly saved his life (DR) |

| Have you already filed a charge on this matter with the EEOC? | Yes ☑   No ☐   online preliminary; |
|---|---|
| | If yes:  Date you filed: 01/16/2018 Charge Number: INQUIRY # 541-2018-00852 |
| | * FORM "5" * FAXED ON ↑ |

| Have you filed a complaint on this matter with another agency? | Yes ☐   No ☑ |
|---|---|
| | If yes:  Agency name: ___ n/a ___ |
| | Date you filed: __/__/__   Complaint Number: _____ |

| Do you have someone representing you in this matter? | Yes ☑   No ☐ |
|---|---|
| | If yes:  Attorney ☒   Union ☐   Other ☐ |
| | Name: RAUL N. RODRIGUEZ, esq.  Date of Contact: 08/15/2017 |
| | Email: _____   Phone: 303.861.1797 |

| Who can we contact if we are unable to reach you? | Name: MIKE VIGIL    Relationship: HUSBAND |
|---|---|
| | Address: 1485 Salt bush Ridge R City: Highlands Ranch State: CO Zip Code: 80126 |
| | Email: nmvigil@gmail.com Home Phone: 303.518.7721 (Hm) 303.470.4641 (cell) |

| Privacy Act Statement | This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are: 1) EEOC PRE CHARGE INQUIRY, FORM 290A, ISSUED OCTOBER 2017 2) AUTHORITY 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626, 42 U.S.C. §1211?(a), 3) PRINCIPAL PURPOSE. The purpose of this form is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge counseling, if appropriate. 4) ROUTINE USES. EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against an attorney representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters. 5) WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION. Providing this information is voluntary but the failure to do so may hamper the Commission's assessment of your situation. It is not mandatory that this form be used to provide the requested information. EEOC Pre-Charge Inquiry, Form 290A, issued October 2017. |

Please note: You must file a charge of job discrimination within 180 days from the day you knew about the discrimination or within 300 days from the day you knew about the discrimination if the employer is located where a state or local government agency enforces job discrimination laws on the same basis as the EEOC's laws. This Pre-Charge Inquiry is not a charge. If you would like to file a charge of discrimination immediately, contact the EEOC office on the cover letter. We recommend that you keep a copy of your completed Pre-Charge Inquiry and the Cover Letter for your records.

**THIS PRE CHARGE INQUIRY IS NOT A CHARGE OF DISCRIMINATION**



**Assignee:**

Dana McCann

🔒 lock

**INQUIRY INFORMATION**        CHARGE FINALIZATION

**REASON(S) FOR CLAIM**

**Date of Incident (Approximate):**

05/04/2017

**Pay Disparity:**

No

**Location of Incident:**

Colorado

**Reason for Complaint:**

Race,Age - I am 40 years of age or older,National origin and/or ethnicity,Sex (including pregna
ncy, sexual orientation and gender identity),Religion,Disability,Retaliation - I filed a charge of j
ob discrimination about any of the above,Retaliation - I complained to my employer about job
discrimination

**EEOC (INQUIRY) NUMBER: 541-2018-00852N**

**Submission (initial inquiry) Date:**

01/08/2018

**Claim previously filed as charge with EEOC?**

No

**IMS** Integrated Mission System - Next Generation

**INQUIRY OFFICE**

**Receiving:**

Denver Field Office

**Accountable:**

Denver Field Office

**APPOINTMENT**

**Appointment Date and time:**

**Interview Type**

**APPROXMATE DEADLINE FOR FILING A CHARGE**

**Earliest Date:**

02/28/2018

**Latest Date:**

02/28/2018

**POTENTIAL CHARGING PARTY**

**First Name, Middle Initial:**

Jami M

**Last Name:**

Vigil

**Street or Mailing Address:**

1465 Saltbush Ridge Rd

**IMS** Integrated Mission System - Next Generation

Year of Birth:

1970

**Email Address:**

jamimvigil@gmail.com

**Home Phone Number:**

303-470-1641

**Cell Phone Number:**

303-908-9200

**RESPONDENT**

**Organization Name:**

Vibra Hospital of Denver

**Type of Employer:**

Business or non-profit organization that I applied to, work for, or worked for

**Number of Employees:**

20 or more employees

**Street or Mailing Address:**

8451 Pearl Street

**Building, Suite or Room #:**

**City,State,Zip Code:**

THORNTON, CO 80229

**County:**

Adams

**Phone Number:**

303-288-3000



Ms. Lorna Fulton

**Email Address:**


**Phone Number:**



**LOCATION OF POTENTIAL CHARGING PARTY'S EMPLOYMENT**

**Street or Mailing Address:**


**Building, Suite or Room #:**


**City,State,Zip Code:**


**County:**



**POTENTIAL CHARGING PARTY'S DEMOGRAPHICS**

**Gender:**

F

**Disabled:**

*I have a disability*

**Are you Hispanic or Latino?**

hispanic or latino

**National Origin:**

Other Hispanic/Latino

**Ethnicity:**

White,

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: | Jami M. Vigil | From: | Denver Field Office |
|---|---|---|---|
| | 1465 Saltbush Ridge Rd | | 303 East 17th Avenue |
| | Highlands Ranch, CO 80126 | | Suite 410 |
| | | | Denver, CO 80203 |

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) | | |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 541-2018-00852 | Christopher D. Padilla, Supervisory Investigator | (303) 866-1336 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -

(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_____

Amy Burkholder,
Field Office Director

MAR 1 2 2020

(Date Mailed)

Enclosures(s)

cc:    Lorna Fulton
       Human Resources
       VIBRA HOSPITAL OF DENVER
       8451 Pearl Street
       Thornton, CO 80229

Enclosure with EEOC
Form 161 (11/16)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    *Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),*
*the Genetic Information Nondiscrimination Act (GINA), or the Age*
*Discrimination in Employment Act (ADEA):***

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within
90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-
day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to
consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell
him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely
manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as
indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate
State court is the general civil trial court.) Whether your file in Federal or State court is a matter for you to decide
after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short
statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of
your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the
charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include
any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters
alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in
some cases can be brought where relevant employment records are kept, where the employment would have
been, or where the respondent has its main office. If you have simple questions, you usually can get answers from
the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint
or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    *Equal Pay Act (EPA):***

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back
pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For
example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit
before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA
suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.
Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA
claim, suit must be filed *within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period*.

**ATTORNEY REPRESENTATION    --    *Title VII, the ADA or GINA:***

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction
in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be
made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your
efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above,
because such requests do *not* relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    *All Statutes:***

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any
questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to
inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide
your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files
are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge
file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be
made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):**   The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➤ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.

➤ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)),  **"major life activities"**  now include the operation of major bodily functions, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

➤ Only one major life activity need be substantially limited.

➤ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

➤ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active.**

➤ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months.**

**"Regarded as" coverage:**

➤ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

➤ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

➤ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.

➤ A person is not able to bring a failure to accommodate claim *if the individual is covered only under the* "regarded as" definition of "disability."

*Note:  Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.*  For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.